**CAREY INDUSTRIES, INC.**

v.

**The UNITED STATES.**

**No. 451–73.**

United States Court of Claims.

Jan. 23, 1980.

James A. Pemberton, Jr., Washington, D.C., attorney of record, for plaintiff; King & King, Washington, D.C., of counsel.

Jean Schepers, Washington, D.C., with whom was Asst. Atty. Gen., Alice Daniel, Washington, D.C., for defendant.

Before FRIEDMAN, Chief Judge, and NICHOLS and SMITH, Judges.

OPINION

NICHOLS, Judge:

This action was brought by the plaintiff, Carey Industries, Inc., pursuant to section 108 of the Renegotiation Act of 1951, *as*

*amended* (50 U.S.C.App. § 1218 (Supp. V 1975)). On August 31, 1973, the Renegotiation Board determined under that Act that the plaintiff's profit from defense contracts and subcontracts during the review year (December 1, 1968, through May 31, 1969) was excessive to the extent of $250,000. Unfortunately, we do not have the reasons for that order, as they would be useful even though not binding here. As we stated in *Tool Products Co. v. United States,* 589 F.2d 506, 507, 218 Ct.Cl. ——, —— (1978), our duty is to redetermine these amounts de novo, not treating the board's statements as proof of the facts or conclusions stated therein. This case has also been tried before Senior Trial Judge White who has submitted a recommended opinion and findings which we do not print. We agree with much of the opinion but deem what follows presents the essential issues of law in the case. We adopt the findings as our own and affirm them except in a few instances designated in an order entered this date. The parties agreed, as do we, that virtually the case has a single issue, the salary allowance, with all its direct and indirect consequences. We avoid therefore, the usual extended discussion of all the factor issues such as the case presents. Copies of the findings and the opinion of the trial judge are in the possession of the parties.

The trial judge found that plaintiff received or accrued an excessive profit of $184,317. While we find the trial judge's findings helpful, we differ with him in two respects: first, in our analysis of the amount of reasonable compensation due plaintiff's officer, Mr. Carey, we find that he is entitled to a salary of $212,059 for the review year. The trial judge had allotted only $65,000 for Mr. Carey's salary. Secondly, in making our adjustments under the statutory factors as to plaintiff's allowable and reasonable profits for the review year, we conclude that this figure should be $375,000 and not $425,000 as the trial judge found. As a result of these two modifications of the trial judge's analysis, we conclude that plaintiff's profit during the review year was excessive only to the extent of $87,258. See Table III.*

It should be noted at the outset that the present case was tried in April and June of 1977, thus tried after our decision in *Major Coat Co. v. United States,* 543 F.2d 97, 211 Ct.Cl. 1 (1976). We warned that much of the government's success in renegotiation cases tried after *Major Coat* would depend on whether or not the government had presented sufficient comparative data to this court to permit an informed and reasoned determination where such data was available. 549 F.2d at 197–200, 211 Ct.Cl. at 51–53. This position has been reiterated in several opinions since *Major Coat* and we reaffirm it now. *See American Diversified Corp. v. United States,* Ct.Cl., 609 F.2d 442 at 444 (1979); *Tool Products, supra,* 589 F.2d at 508, 218 Ct.Cl. at ——. This strong evidentiary requirement, however, is not applicable in the instant case essentially because, as both parties admit, plaintiff is truly unique in its field. This precludes the possibility of any introduction of comparative data that would be controlling in the way the precedents cited had in mind. Thus, the more demanding standard of review which is to be applied to cases tried after *Major Coat* is not applicable in the instant case.

Briefly, plaintiff was a Connecticut corporation with a plant located in Waterbury, Connecticut, and closely held by its president, Mr. Carey. Carey Industries started its business operations for the first time at the beginning of the review year, on December 1, 1968, having previously been a sole proprietorship. As such, Mr. Carey was highly successful. To start the business, Mr. Carey obtained support of a bank that was much impressed with his achievements. Essentially, the business consisted of manufacturing colored smoke mixes that were to be used in military munitions. All of the plaintiff's products during the review year were delivered to government defense

---

* For greater convenience, all tables are assembled at the end of the opinion, following the conclusion.

agencies, either directly pursuant to prime contracts which the plaintiff had with such agencies or indirectly pursuant to subcontracts between the plaintiff and other companies that were prime contractors with government defense agencies. Mr. Carey was universally conceded to possess unmatched expertise in this special field. He had a few other employees, but essentially he was the whole operation and so regarded by those who dealt with him. The low value added by the efforts of other employees (to be discussed below) suggests, as does much other evidence, that without Mr. Carey there would have been no plaintiff.

The plaintiff's sales during the review year, which totaled $3,941.178, were 100 percent renegotiable.

The essential issues for review by this court are twofold:

1. In determining plaintiff's actual profits, after applicable disallowances, what reasonable compensation is allowable for plaintiff's officer, Mr. Carey?

2. In determining plaintiff's reasonable profits, what appropriate adjustments must be made under the statutory factors?

We will now consider each of the above issues individually:

1. *The Amount of Actual Profit after Disallowances.*

As we have previously stated, the starting point in any renegotiation case is necessarily a calculation of the renegotiated company's actual profits for the review year. *Camel Manufacturing Co. v. United States,* 572 F.2d 280, 285, 215 Ct.Cl. 460, 469–70 (1978). At the trial level, plaintiff proposed the calculations for determining actual profit as set forth in Table I.

The trial judge adopted plaintiff's proposed figures but reduced the $3,607,631 total expense figure to $3,331,861 with the adjustments shown in Table II.

Thus, the trial judge reduced plaintiff's expense figure of $3,607,631 by $275,770 and arrived at the new figure of $3,331,861. Subtracting this figure from the total net sales of $3,941,178, the trial judge found that plaintiff had actual profits of $609,317.

While we agree with the trial judge's adoption of plaintiff's figures for net sales and cost of goods sold as well as with his reductions in plaintiff's expenses regarding the bad debt, purchase figure discount and travel and entertainment expenses, we disagree as to the amount of reasonable compensation due Mr. Carey. We believe that Mr. Carey is entitled to $212,059 in compensation, the figure which, as the parties agree, was set by the Internal Revenue Service Appellate Division in its 1972 settlement with the plaintiff. The statute, 50 U.S.C.App. § 1213(f) provides that items estimated to be allowable as deductions under the IRC shall be allowable likewise in renegotiation. Moreover, in *Petro-Chem Marketing Co. v. United States,* 602 F.2d 959, 221 Ct.Cl. —— (1979), a tax case regarding reasonableness of executive compensation, this court stated that the IRS's reasonable compensation determinations " * * * must be presumed to be correct, unless there is clear evidence establishing the impropriety of such determinations, inasmuch as a presumption of regularity supports the official acts of public officers." 602 F.2d at 968, 221 Ct.Cl. at ——. We find no such evidence here; moreover, we believe that abundant evidence does exist which indirectly supports the result by conclusively demonstrating that Carey Industries could not function without the services of Mr. Carey. Mr. Carey was the main force behind the company he created. Thus, we find that a salary of $212,059 is a reasonable one for a man in Mr. Carey's unique position. Pursuant to this determination, the amount of expenses allowed plaintiff is increased from the trial court's $3,331,861 figure to $3,478,920.

The size of the salary allowed may seem startling, but we think these considerations support the IRS's position: 1. In the case of what is essentially a sole proprietorship with the salaried executive owning the stock, the usual search for the fair market value of the service measured by comparables, is a vain search when there were no comparables. If Mr. Carey had refused his

services, there is no apparent sum with which services of a like executive could have been procured. 2. The inquiry therefore narrows down to what is a fair division of the gross profit between the owner as president and the owner as stockholder. There is no reason not to postulate a pre-existing (though here not actual) commitment to share the profit actually received through commissions or bonuses. 3. The stockholders might as a rule contribute the capital, but in the light of the history of this company there seems to be no particular reason to assign earnings as productions of capital or facilities instead of the founder's know-how. He had already, before the year under review, shown himself capable of generating large earnings with little or no capital or facilities.

We think there is at least a presumption that the IRS is correct. It may be readily rebuttable, but no one has shown us anything to rebut it here. We do not think the mere startling size of the allowance (explained as we have done) suffices to overcome the presumption the IRS has done its job properly. Subtracting the allowable costs as revised by us from the total net sales of $3,941,178, we conclude that plaintiff realized actual profits of $462,258 for the review year.

### 2. *Determination of Excessive Profits.*

The calculation of excessive profits commonly involves a two-step process—

a. the determination of what would be a normal or reasonable profit for Carey Industries in a competitive situation that lacked the pressure of the heavy demand during the review year for colored smoke mixes to be used in the national defense effort; and,

b. the adjustment of this normal profit figure pursuant to the statutory factors we must consider under Section 103(e) of the Renegotiation Act, *as amended* (50 U.S.C. App. § 1213(e) 1970).

Regarding plaintiff's reasonable profits figure, we adopt, as did the trial judge, the figure of $300,000 as proposed by defendant's expert, Dr. Edward M. Kaitz. This figure represents 8.3 percent of plaintiff's sales before adjustment.

In adjusting this $300,000 figure under the statutory factors, the trial judge found favorably for the plaintiff under all of the factors except the reasonable cost and profits factor, as to which he made no finding, stating that sufficient data on this matter did not exist. Having found favorably under all of the statutory factors except one, the trial judge increased the reasonable profits figure of $300,000 by $125,000. The trial judge did not itemize this $125,000 among the six factors except to say that $25,000 was attributable to plaintiff's contribution to the defense effort. Thus, having found plaintiff's reasonable profits to be $425,000 and its actual profits to be $609,317, the trial judge found plaintiff's profits to be excessive to the extent of $184,317.

We find favorably for plaintiff under all the statutory factors except the factors of reasonableness of costs and profits and character of business. To that extent we disagree with the trial judge.

In connection with reasonableness of costs and profits, the court has made a large upward adjustment in the allowable cost of performing the contracts in question. Since the adjustment is made largely on the salary costs, it impacts on a factor as to which it was not possible to attempt to determine whether costs were reasonable or not and the favorable finding of the trial judge was wholly on that ground. Here, now, a large addition is made to these costs without any direct evidence to show them to be reasonable, if they were. Plaintiff has to rely on a presumption. We think plaintiff cannot be denied its cost advantage, but a new and more cautious approach is required to the assignment of bonuses for favorable cost performance.

Under the character of business factor, we also find adversely as to plaintiff. The key criterion for this unfavorable finding is the minimal value added by plaintiff to the cost of the materials used. As we have stated previously, under the character of

business factor, value added is of great importance. *Butkin Precision Mfg. Corp. v. United States,* 544 F.2d 499, 211 Ct.Cl. 110 (1976). As was stated in *Tool Products, supra,* the basic proposition behind the value added concept is rather simple:

> \* \* \* [Y]ou are entitled to more profit on work you do yourself than on work done by others, who exact their profit in the sales price of your raw materials or components, and on whose profit yours will be cumulative. \* \* \* 589 F.2d at 511, 218 Ct.Cl. at ——.

In our case, we find no fault with Dr. Kaitz's determination of the amount of value added. As he correctly found, the value added by plaintiff during the review year was stunningly minimal at 2 percent. This percentage is based on the fact that the cost of goods sold by plaintiff during the review year was $3,173,188 of which the direct labor amounted only to $62,152. Because of this very low value added, we find unfavorably as to plaintiff under the character of business factor.

The salary of Mr. Carey alone, as allowed herein, exceeds by many times the value added by the remaining entire work force. We have to be presuming most of the sales value is added by him alone. There is no basis for crediting it to the work force. Value added by top level executives does not go into cost of goods sold and the proper allowance for it would appear to be in the salary allowances.

Because of our unfavorable findings under "character of business" and "reasonableness of cost and profits," we conclude that the trial judge's allowance of $125,000, as favorable recognition under the statutory factors is excessive and ought to be reduced by $50,000 to $75,000. Thus we find that plaintiff's reasonable profits figure for the review year was $375,000. Subtracting this figure from our actual profits figure of $462,258, we hold that plaintiff incurred excessive profits only to the extent of $87,258.

## CONCLUSION OF LAW

Upon the trial judge's findings and opinion, which are adopted by the court, with modifications, the court concludes as a matter of law and determines that for its fiscal year which began on December 1, 1968, and ended on May 31, 1969, the plaintiff realized excessive profits in the amount of $87,258 from contracts and subcontracts subject to renegotiation under the Renegotiation Act of 1951, *as amended.* Our determination is given in diagrammatic form in Table III. Judgment is hereby entered for the defendant on its counterclaim in the sum of eighty-seven thousand two-hundred and fifty-eight dollars ($87,258), less appropriate state and federal tax credits, plus interest thereon as provided by law.

### TABLE I

#### PLAINTIFF'S PROPOSED FIGURES FOR ACTUAL PROFITS DETERMINATION

Sales, less discounts, returns and allowances:

| | |
|---|---|
| Prime Contracts | $ 241,292 |
| Subcontracts | 3,699,886 |
| Total Net Sales | $3,941,178 |

Cost of goods sold:

| | |
|---|---|
| Materials | $3,111,036 |
| Direct Labor | 62,152 |
| Total Cost of Goods Sold | $3,173,188 |
| Percent of Sales | 80.5% |

Selling and Advertising Expenses:

| | |
|---|---|
| Other Selling Expenses | $ 16,257 |
| Percent of Sales | .4% |

General and Administrative Expenses:

| | |
|---|---|
| Officer's Salary | $ 210,000 |
| Other | 208,186 |
| Total General and Admin. Exp. | $ 418,186 |
| Percent of Sales | 10.6% |

Total Expenses under Plaintiff's figures:

| | |
|---|---|
| Total Cost of Goods Sold | $3,173,188 |
| Other Selling Expenses | 16,257 |
| Total General and Admin. Exp. | 418,186 |
| | $3,607,631 |

Plaintiff's Actual Profit Calculation:

| | |
|---|---|
| Total Net Sales | $3,941,178 |
| Plaintiff's Claimed Expenses | – 3,607,631 |
| Plaintiff's Claimed Actual Profits | $ 333,547 |

## TABLE II

### TRIAL JUDGE'S REDUCTION OF PLAINTIFF'S EXPENSE FIGURE

1. The trial judge found that Mr. Carey was due only $65,000 in reasonable compensation, thus reducing plaintiff's expenses by $203,770. Plaintiff had allowed Mr. Carey a $268,770 salary.

2. The trial judge found that plaintiff was entitled to only a $14,380 bad debt expense, thus reducing plaintiff's expenses by $43,141. Plaintiff had claimed $57,521 as a bad debt expense.

3. The trial judge found that plaintiff was not entitled to any purchase figure discount expense. Plaintiff had claimed $25,695 as an expense here.

4. Finally, the trial judge found that plaintiff was entitled to only $1,000 in travel entertainment expenses, thus reducing plaintiff's expenses by $3,164. Plaintiff had claimed a $4,164 expense here.

## TABLE III

| DECISION PER – – – | RENEGOTIATION BOARD | TRIAL JUDGE | COURT |
|---|---|---|---|
| FY Dec. 1, 1968 through May 31, 1969 | | | |
| Renegotiable Sales | Not Given | $3,941,178 | $3,941,178 |
| Renegotiable Profit | Not Given | 609,317 | 462,258 |

| DECISION PER – – – | RENEGOTIATION BOARD | TRIAL JUDGE | COURT |
|---|---|---|---|
| Percent Return | Not Given | 15.46 | 11.73 |
| Profit to be eliminated | $250,000 | 184,317 | 87,258 |
| Adjusted Sales | Not Given | 3,756,861 | 3,853,920 |
| Adjusted Profit | Not Given | 425,000 | 375,000 |
| Adjusted Percent Return | Not Given | 11.31 | 9.73 |